# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| KATEENA BUTLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  04 C 6933 |
| | ) | |
| ILLINOIS BELL TELEPHONE | ) | |
| COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Kateena Butler's ("Butler") and

Defendants Illinois Bell Telephone Company's ("Illinois Bell"), SBC

Communications, Inc.'s ("SBC"), Ameritech Sickness and Accident Disability

Benefit Plan's ("SADBP"), and Ameritech Long Term Disability Plan's cross-

motions for summary judgment.  For the reasons stated below, we grant Butler's

motion for summary judgment in part and deny it in part, and we deny Defendants'

motion for summary judgment in its entirety.

## BACKGROUND

Butler alleges that she was employed as a consumer advocate fielding

1

telephone calls from customers from October 1997 to August 2000, for Illinois Bell, a subsidiary of SBC.  Butler alleges that she began working for Illinois Bell again in August 2001.  Butler alleges that SBC was the plan administrator of the employee welfare plans for Illinois Bell employees ("Plans").  Butler claims that in December 2002, she was diagnosed with multiple sclerosis ("MS") and that over the next few months she informed her supervisors of her illness.  Butler alleges that in January 2003, March 2003, and April 2003, she submitted medical documentation of her illness to the SBC Medical Absence and Accommodations Resource Team ("SMAART Unit")  which was a third party administrator of the Plans.

Butler alleges that she was granted leave on March 20, 2003, for medical reasons, but was denied protection under the Family Medical Leave Act ("FMLA") because she had allegedly missed too much work in the preceding twelve months. Butler alleges that she returned to work on March 25, 2003, but became ill again on April 9, 2003.  Butler claims that on April 11, 2003, she called the SMAART Unit and asked for disability benefits under the SADBP and was told that she had to wait seven days before her disability benefits would resume and she could apply for such benefits.  Butler claims that on April 12, 2003, she left work because she was ill and that from April 14, 2003, to April 19, 2003, she called each day to the Illinois Bell attendance office ("Attendance Office").  According to Butler, the person she spoke with at the Attendance Office never told her that she was not eligible to take FMLA leave and, in fact, asked Butler whether she was taking FMLA leave.  Butler claims

that she indicated each day that she was taking FMLA leave. Butler claims that when she attempted to return to work on April 21, 2003, she was informed for the first time that she was not eligible to take FMLA leave, and was suspended for her absences from work. Butler claims that if she had been told she was not eligible for FMLA leave, she would have not have attempted to return to work on April 21, 2003, and would have instead applied for disability benefits and gotten approved for disability leave. Butler states that she called the Attendance Office on April 22, 2003, and was told that she could not go back on disability benefits because she had been suspended. Defendants claim that she was not told that she was barred from applying for disability benefits because of her suspension and that she did not receive benefits because she never applied in a timely manner. Butler alleges that on May 30, 2003, after a hearing with Illinois Bell management and a union representative, she was terminated without disability benefits for violations of Illinois Bell's attendance policy.

Butler subsequently brought the instant action and her complaint includes an estoppel claim under the FMLA, 29 U.S.C. § 2601 *et seq.*, and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, (Count I), a breach of fiduciary duty claim under 29 U.S.C. § 1104 and 29 U.S.C. § 1132(a)(3) (Count II), a claim under 29 U.S.C. § 1132(a)(1)(B) ("Section 1132(a)(1)(B)") for an improper interpretation of the SADBP (Count III), and a claim under 29 U.S.C. § 1140 of ERISA for retaliation (Count IV). Butler moves for

summary judgment on Counts I, II and III.  Defendants move for summary judgment on all counts.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.,* 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson,* 477 U.S. at 255; *Bay v. Cassens Transport Co.,* 212 F.3d 969, 972 (7th Cir. 2000). When there are cross motions for summary judgment, the court should "construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.,* 400 F.3d 523, 526-27 (7th Cir. 2005).

## DISCUSSION

I. Defendants' Motion For Summary Judgment

_____Defendants argue that Butler cannot prevail on her ERISA claims because she did not exhaust her administrative remedies. Defendants also contend that Butler cannot base her ERISA estoppel claim on oral statements by Illinois Bell personnel, and that there is insufficient evidence to support Butler's ERISA retaliation claim or Butler's claim concerning the interpretation of the SADBP. Defendants further claim that there is not evidence that fiduciaries made any improper representations to Butler. Finally, Defendants argue that Butler's FMLA claim is time-barred.

## A. Exhaustion of Administrative Remedies

Defendants argue that Butler had administrative remedies available to her that she did not pursue. In general, a participant in a plan governed by ERISA must exhaust her administrative remedies before bringing an ERISA action to obtain benefits. *Stark v. PPM America, Inc.*, 354 F.3d 666, 671-72 (7th Cir. 2004). However, exhaustion is not required "if there is a lack of meaningful access to review procedures," or "if pursuing internal remedies would be futile." *Id.* In the instant action, Butler contends that she believed that her attempts to pursue the administrative steps to obtain disability benefits would be futile because a person at the Attendance Office told her that she was not eligible for such benefits when she was on suspension. In order to meet the futility exception to the ERISA exhaustion requirement, a plaintiff must show that is was "'certain' [that the] plaintiff's claim w[ould] be denied by the plan administrator." *Ruttenberg v. U.S. Life Ins. Co.*, 413 F.3d 652, 662 (7th Cir. 2005); *see also Smith v. Blue Cross & Blue Shield United of Wis.*, 959 F.2d 655, 659 (7th Cir. 1992)(stating that "[i]n order to come under the futility exception, the [plaintiff] must show that it is certain that [her] claim will be denied on appeal, not merely that [she] doubt[s] an appeal will result in a different decision").

In the instant action, Butler claims that an employee at the Attendance Office told her that she could not apply for disability benefits because she was on suspension. Defendants deny that any employee made such a statement and thus there is a legitimately disputed fact in regard to the substance of the alleged

conversation. Defendants also point to the deposition testimony of Lisa Trevino ("Trevino"), a manager at Illinois Bell who testified that any employee could apply for disability benefits. (Trev. Dep. 84). However, Trevino further testified that employees with a certain employment status would not meet the eligibility requirements and that their applications would be denied. (Trev. Dep. 84). Trevino also explained that an employee who was on suspension would be unable to satisfy the seven-day waiting period and would thus not be eligible for disability benefits. (Trev. Dep. 97). The mere fact that Trevino testified that "[a]nybody can apply for sickness disability benefits" does not show that Butler had any administrative remedy available, since Trevino indicated that such a claim would have been denied. (Trev. Dep. 84, 97). At the very least, to the extent that Trevino avoided giving a precise answer regarding whether Butler's application, if filed, would have been denied out of hand, there exists genuinely disputed facts that must be addressed by the trier of fact. Defendants also point to past experiences that Butler had with the Plans' claims systems, but such evidence is not sufficient to show that Butler's attempt to apply for disability benefits at the time in question would not have been futile.

In addition, ERISA provides that a summary plan description must be "written in a manner calculated to be understood by the average plan participant" and must be "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. *Bowerman v. Wal-Mart*

*Stores, Inc.*, 226 F.3d 574, 590 (7th Cir. 2000)(quoting 29 U.S.C. § 1022(a)).  Butler

has presented evidence showing that the SADBP written plan does not clearly

apprise participants of their rights when they are under suspension.  Finally, the

decision of whether to "require exhaustion as a prerequisite to bringing a federal

lawsuit is a matter within the discretion of the trial court . . . ." *Lindemann v. Mobil*

*Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996).  Therefore, we find that Defendants

have not pointed to sufficient evidence to warrant barring Butler's ERISA claims

based on her failure to exhaust her administrative remedies and decline to exercise

our discretion to bar her claims for a failure to exhaust her administrative remedies.


<u>B. Oral Misrepresentations</u>

Defendants argue that Butler cannot base her ERISA estoppel claim on oral

misrepresentations.  Although, the Seventh Circuit has recognized that a plaintiff

may bring an estoppel claim under ERISA, it has also cautioned that "ERISA's

prohibition against oral modifications of written plans" must be considered and that

"estoppel in the ERISA context only applies to written, and not to oral,

misrepresentations."  *Gallegos v. Mount Sinai Medical Center*, 210 F.3d 803, 809

(7th Cir. 2000).  In the instant action, Butler's estoppel claim is based mainly on the

alleged oral statements made by personnel at the Attendance Office during her

absences after April 12, 2003, and by an individual at the Attendance Office on

April 22, 2003, when Butler was allegedly told that she could not apply for disability benefits. Butler does not allege that there was a misrepresentation made to her in writing. Although the Seventh Circuit has stated that "equitable estoppel cannot dilute the rule forbidding oral modifications to an ERISA plan," it has also upheld a plaintiff's estoppel action in an ERISA context where the plan's written policy was ambiguous and the plan participant was further misled by statements of the plan's agents. *Bowerman*, 226 F.3d at 586-88.

In the instant action, allowing an estoppel action would not dilute the rule forbidding oral modifications of the written plan. The SADBP is ambiguous in that it indicates an employee needed to consult a "supervisor" before calling SMAART Unit to initiate a claim for disability. (P. Dep. Ex. 28, 2). A flow-chart on page two of the SMAART Unit Guide explains that an employee's first step in the process of applying for disability is to inform a "supervisor of an absence, on-the-job injury, or need for job accommodation." (P. Dep. Ex. 28, 2). The flow-chart also indicates that the "supervisor's" first step in the process is to *advise* the employee to call the SMAART Unit to initiate a claim. (P. Dep. Ex. 28, 2). Defendants use the term "supervisor" in their Local Rule 56.1 statement of undisputed facts to explain that "Coaches" are supervisors. (D SF Par. 13). Defendants further explain that the management structure at their Chicago North location, where Butler worked, consisted of a general manager, four senior managers who reported to the general manager, 40 Coaches, and an unspecified number of attendance managers. (D SF

Par. 13-16). In 2003, this management oversaw approximately 620 union employees. (D SF Par. 16).

Defendants admit that managers in the Attendance Office were responsible for tracking employees' attendance, monitoring employees' compliance with the attendance policy, and assisting senior managers in administering corrective action where appropriate. ( R P SF Par. 33). Defendants further admit that attendance managers inform employees that they cannot begin collecting disability benefits until expiration of the seven-day waiting period and further inform employees as to whether they have been absent for the requisite number of consecutive days needed to begin collecting benefits. (R. PSF Par. 33). As the Seventh Circuit noted in *Bowerman*, ERISA provides that a summary plan description must be "written in a manner calculated to be understood by the average plan participant" and must be "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. 226 F.3d at 590 (quoting 29 U.S.C. § 1022(a)). Defendants' written plan uses the term "supervisor" and states that supervisory roles are split among Coaches, attendance managers and senior managers. Defendants' written plan is sufficiently ambiguous, thus enabling Butler to pursue her ERISA estoppel claim. Therefore, we shall not bar Butler from proceeding on her ERISA estoppel claim based upon alleged oral representations by Illinois Bell employees in the Attendance Office.

C. ERISA Retaliation Claim

Defendants argue that there is not sufficient evidence to support Butler's ERISA retaliation claim. ERISA provides in part that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. A plaintiff bringing an ERISA retaliation claim may proceed by producing direct evidence of discrimination or may proceed under the *McDonnel Douglas* burden–shifting analysis. *Grottkau v. Sky Climber, Inc.*, 79 F.3d 70, 72-73 (7th Cir. 1996). Under such an analysis, the plaintiff is required to establish a *prima facie* case of discrimination by showing that she: "(1) belongs to the protected class; (2) was qualified for his job position; and (3) was discharged or denied employment under circumstances that provide some basis for believing that the prohibited intent to retaliate was present." *Id.* If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to present a legitimate and non-discriminatory reason for the adverse employment action. *Id.* If the defendant presents such a reason, the burden shifts back to the plaintiff to establish that the given reason was a pretext. *Id.*

In the instant action, Butler points to evidence that shows her employer was aware of her medical condition, but still subsequently terminated her participation in the Plans. Butler points to various pieces of evidence that shows that management personnel of Illinois Bell were aware of her illness and the periodic flare-ups of her illness. The evidence also shows that Defendants' management personnel were

aware that Butler was misinformed about her FMLA eligibility leave. Yet, Butler was suspended because of missing work due to her illness. There is sufficient evidence that shows that Defendants used Butler's suspension as a pretext to terminate her employment and avoid future absences by her due to her illness. Therefore, we conclude that there are sufficient genuinely disputed material facts in regard to the ERISA retaliation claim and we deny Defendants' motion for summary judgment on the retaliation claim (Count IV).

### D. Interpretation of SADBP

Defendants argue that there is not sufficient evidence showing that they improperly interpreted the SADBP. Butler contends that Defendants improperly interpreted the SADBP in a manner that routinely denied benefits to employees that are suspended pending dismissal. Butler contends that this interpretation of the SADBP violates the SADBP's own terms because the written policy does not specifically exclude suspended employees from eligibility for benefits. ERISA provides in Section 1132(a)(1)(B) that an employee participating in a benefits plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

The SADBP's administrator's interpretation of the plan is reviewed under the arbitrary and capricious standard because the SADBP allows Defendants' Benefit Committee the power to exercise discretion in determining employees' benefits

eligibility. *Sisto v. Ameritech Sickness and Accident Disability Benefit Plan*, 429 F.3d 698, 700 (7th Cir. 2005); *see also Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund,* 390 F.3d 1040, 1045 (7th Cir. 2004)(holding that an arbitrary and capricious standard when trustees are given complete discretionary authority to interpret the plan).   Under the arbitrary and capricious standard, a court must uphold the plan's decision "as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Houston v. Provident Life & Accident Ins. Co.,* 390 F.3d 990, 995 (7th Cir. 2004) (quoting *Hess v. Hartford Life & Accident Ins. Co.,* 274 F.3d 456, 461 (7th Cir. 2001)); *see also Tegtmeier,* 390 F.3d at 1045 (holding that "the administrator's decision will only be overturned if it is 'downright unreasonable.' ") (quoting *Carr v. Gates Health Care Plan,* 195 F.3d 292, 295 (7th Cir. 1999).

Defendants have offered various reasons for their decision that Butler is ineligible for disability benefits, including that the intent of the SADBP is to provide benefits for employees that are not able to work due to a disability and that an employee on suspension is not absent from work because of a disability.  Defendants also argue that an employee that is suspended pending dismissal is going to be unable to satisfy the seven day period referred in the SADBP as the "Waiting Period" and thus such an employee will inevitably be unable to receive disability

benefits. (D Ex. Tap 12 3-4). However, Butler correctly points out that the term "Eligible Employee" is defined as "an individual who . . . is a regular full-time or part-time employee of the company. . . ." (D Ex. Tab 12, 2). Butler also correctly points out that an Eligible Employees' benefits "shall cease on the date employment with the Company is terminated." (D Ex. Tab 12, 4). The SADBP further provides that "[t]ermination shall include retirement, layoff or leave of absence." (D Ex. Tab 12, 4). Based on the above, and the provisions contained in the SADBP, there is sufficient evidence that shows that Defendants may have erred in their interpretation of the SADBP. However, there is not sufficient evidence to conclude as a matter of law whether Defendants' actions were arbitrary and capricious. There are genuinely disputed facts in regard to this claim that must be addressed by the trier of fact. Therefore, we deny Defendants' motion for summary judgment on the SADBP interpretation claim (Count III).

### E. Breach of Fiduciary Duty Claim (Count II)

Butler claims that the Defendants' Attendance Office managers violated their fiduciary duties under ERISA by failing to inform Butler of her ineligibility for FMLA leave in April 2003, and by failing to advise her generally about her benefits options during the same period. ERISA provides in 29 U.S.C. § 1104 that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . ." 29 U.S.C. § 1104(a). ERISA also provides for

civil enforcement of its provision under 29 U.S.C. § 1132(a)(3).

It is undisputed by the parties that Butler's absences in April 2003, which were not covered by the FMLA caused her to be suspended pending termination. Butler claims that Defendants' initial failure to inform her that she was not eligible for FMLA leave caused her to lose her disability benefits, in violation of the Company's fiduciary duty under ERISA.

### 1. Attendance Office Managers

Defendants argue that the persons who allegedly asked Butler between April 12, 2003, and April 19, 2003, if she was taking FMLA leave, and allegedly informed Butler on April 22, 2003, that she could not apply for disability benefits were not fiduciaries. To be a fiduciary of an ERISA plan, an individual or entity "must exercise a degree of discretion over the management of the plan or its assets, or over the administration of the plan itself." *Schmidt v. Sheet Metal Workers' Nat'l Pension Fund*, 128 F.3d 541, 547 (7th Cir. 1997); *see also* 29 U.S.C. § 1002(21)(A) (defining the term "fiduciary"). Defendants admit that they were fiduciaries of the SADBP, but deny that Defendants' managers and their Attendance Office personnel were fiduciaries under ERISA.

It is undisputed that during Butler's employment, Defendants utilized the services of the SMAART Unit, a third party, as claims administrator to evaluate and process claims after they are made. (R. D SAF Par. 14). The evidence clearly shows that Attendance Office managers' primary function was to track attendance and aid

15

senior managers in determining when to discipline employees. Attendance Office managers also informed employees who called to report absences that after 7 days of being absent, they were eligible to call SMAART Unit to apply for disability benefits. Butler argues that Attendance Office managers also encouraged employees to file for disability benefits once they were eligible. Regardless, the Attendance Office managers were doing nothing more than applying SADBP rules and any encouragement to file was certainly made pursuant to the existing policies. Attendance Office managers clearly exercised no discretion over the plan. Pursuant to Local Rule 56.1, Butler does not deny that Attendance Office managers did not evaluate medical conditions or decide whether someone was eligible for benefits. Instead, Attendance Office managers simply informed employees about whether they could initiate a claim for disability. (Reply R. P SF Par. 33). In addition, Attendance Office managers did not deal with the Plan's management or assets. Therefore, no reasonable jury could find that the Attendance Office managers were fiduciaries under ERISA.

‾‾‾‾‾

### 2. Care in Training Non-Fiduciaries

Butlers also argues that Defendants should be held liable because the fiduciaries of the Plans failed to properly instruct the managers at the Attendance Office. Fiduciaries may be liable for failing to exercise due care in training non-fiduciaries who counsel beneficiaries regarding an ERISA plan. *Schmidt*, 128 F.3d at 547-48. SBC's General Manager, Tony Mokry ("Mokry"), testified at his

deposition that Defendants required their managers to inform employees of their FMLA eligibility status within two days of learning of an employee's need for FMLA leave, but that they failed to require managers to do so themselves. (Mok. Dep. 144). In Mokry's deposition, Mokry could not recall whether he enforced the above mentioned policy. (Mok. Dep. 146). Defendants have failed to point to sufficient evidence to conclusively show that they properly trained non-fiduciaries at the Attendance Office regarding the Plans. Butler alleges that between April 12, 2003, and April 19, 2003, the personnel at the Attendance Office specifically asked her if she was taking FMLA leave and that she responded in the affirmative. Butler contends that the employees did not subsequently advise her of her ineligibility under FMLA within two days. Such facts, if true, would be an indication that Defendants' personnel at the Attendance Office might not have been properly trained by the fiduciaries of the Plan. Thus, such factual determinations concerning the training of non-fiduciaries must be made by the trier of fact. Therefore, we deny Defendants' motion for summary judgment on the breach of fiduciary duty claim (Count II).

### F. Time-Barred FMLA Claims

Defendants argue that Butler's FMLA claims are time-barred. The statute of limitations period for an FMLA claim alleging a negligent violation of the FMLA is two years. 29 U.S.C. § 2617 (c)(1). The statute of limitation period for an FMLA claim alleging a wilful violation of the FMLA is three years. 29 U.S.C. § 2617

(c)(2).  The parties agree that Butler's employment was terminated on May 30, 2003.

Defendants argue that Butler first brought her FMLA claim on December 22, 2005.

However, on December 22, 2005, Butler merely filed an amended complaint.  She

originally filed a complaint in this action on October 28, 2004, which was within

both the two-year and three-year statute of limitations periods.  An amendment of a

complaint "relates back to the date of the" prior complaint if "the claim . . . asserted

in the amended pleading arose out of the conduct, transaction, or occurrence set forth

or attempted to be set forth in the original pleading . . . ."  Fed. R. Civ. P. 15(c)(2).

Butler did not specifically refer to the FMLA in her original complaint.  However,

Butler's complaint was filed *pro se* and it referred to the same conduct that was the

basis of her specific pleading of a FMLA claim in her amended complaint.  Thus,

since Butler's amended complaint relates back to the filing of her original complaint,

her FMLA claims are not barred to the extent that they are based on a negligent or

wilful violation of FMLA.  Therefore, we deny Defendants' motion for summary

judgment on the FMLA claim (Count I).


II. Butler's Motion For Summary Judgment

        Butler moves for summary judgment on the estoppel claims (Count I), the

breach of fiduciary duty claim (Count II), and the Section 1132(a)(1)(B) claim

(Count III).


        A.  Estoppel Claims under the FMLA and ERISA (Count I)

Butler argues that the evidence clearly supports her estoppel claims. In order to prevail on an estoppel claim, a plaintiff must establish: "(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *Kennedy v. United States*, 965 F.2d 413,417 (7th Cir. 1992) (quoting *United States v. Asmar,* 827 F.2d 907, 912 (3rd Cir. 1987) ). The burden of proof is on the party claiming estoppel. *Id.*

In regard to the FMLA eligibility of an employee, "an employer who by his silence misled an employee concerning the employee's entitlement to family leave might, if the employee reasonably relied and was harmed as a result, be estopped to plead the defense of ineligibility to the employee's claim of entitlement to family leave." *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 582 (7th Cir. 2000). The Seventh Circuit has not definitively adopted an estoppel action in the ERISA context and has emphasized that "the availability of estoppel in the ERISA context is constrained by other important considerations animating ERISA." *Bowerman*, 226 F.3d at 586. Notably, the court stressed that "equitable estoppel cannot dilute the rule forbidding oral modifications to an ERISA plan." *Id.* However, the court in *Bowerman* upheld a plaintiff's estoppel action in an ERISA context where the plan's written policy was ambiguous and the plan participant was further misled by statements of the plan's agents. 226 F.3d at 588-90.

In the instant action, Butler pleads one "federal common law estoppel claim" arising under both the FMLA and ERISA. Butler claims that Defendants: 1) failed

to tell her that she no longer qualified for FMLA leave in a timely fashion and, 2) misinformed her that she could not initiate a disability claim while she was on suspension pending termination. She claims that she relied on this misinformation and/or silence by Illinois Bell, and, as a result, was terminated without receiving disability benefits.

### A. Alleged Misrepresentations or Omissions

Butler contends that the personnel at Illinois Bell believed that she was taking FMLA leave between the dates of April 12, 2003, and April 19, 2003, and that personnel at Illinois Bell gave her the false impression that she qualified to take FMLA leave. Butler also argues that she was given false information concerning her ability to present a disability claim while on suspension.

#### 1. Calls to Attendance Office

Butler admits that she was ineligible for FMLA leave because she had not worked 1250 hours in the prior twelve months, a requirement under FMLA to qualify for leave. 29 U.S.C. § 2611(2)(A)(i)-(ii); (R. P SF Par. 50). Defendants admit, pursuant to Local Rule 56.1, that Butler went home sick on April 12, 2003. ( R P SF Par. 78). Defendants also admit that the "SBC Coach's Log" for that day states that: "Kateena left under FMLA." ( R PSF Par. 78). Defendants do not deny that on the days that Butler was scheduled to work between April 13, 2003 and April 19, 2003, she called the Attendance Office in the morning to report her absence. (R.

P SF Par. 81). However, Defendants dispute Butler's contention that each day that she called, a person at the Attendance Office asked her whether she was taking FMLA leave. ( R P SF Par. 81). There is sufficient evidence that corroborates Butler's contention that the people she spoke with at the Attendance Office asked if she was taking FMLA leave. For example, Illinois Bell's computer log shows separate entries for Butler's absences on April 12, April 14, April 15, April 16, and April 19, 2003, denoting each absence as "FMLA Illness-Full." (P Reply Ex. Tab 6). Defendants have not contested the validity of the logs or pointed to evidence that shows that the Attendance Office personnel did not make such entries. Based on such evidence, no reasonable trier of fact could find other than that Butler properly sought to be on medical leave and the Attendance Office personnel did in fact place Butler on FMLA leave. The question is not whether the classification of "FMLA leave" was available to Butler. The question is whether Butler sought leave for medical reasons and whether such leave at the time was approved by the actions of the Attendance Office personnel. Defendants have not presented any evidence that Butler was told that her request for medical leave was denied. To the contrary, Defendants' own uncontested logs reflect "FMLA Illness-Full." (P Reply Ex. Tab 6). Therefore, based on all the evidence, no reasonable trier of fact could find other than that Butler properly sought to be on medical leave and the Attendance Office personnel did in fact place Butler on FMLA leave. In addition, the evidence shows that Butler relied on the representations by the Attendance Office personnel. Such reliance was also reasonable since the Attendance Office personnel were in charge

of addressing leave issues with employees. Finally, the evidence clearly shows that as a result of Butler's reliance on the representations by the Attendance Office personnel that she was taking FMLA leave, she was suspended and her employment was terminated and thus, she relied on the representations of the Defendants to her detriment. Therefore, we grant Butler's motion for summary judgment on the estoppel claim as it relates to the statements by the Attendance Office personnel that indicated that she was taking FMLA leave.

### 2. Misrepresentation Concerning Applying for Disability

Defendants contend that Butler did not receive disability benefits because she did not apply for them in a timely fashion. Butler claims that after she was suspended pending termination, she called the Attendance Office on April 22, 2003 to ask whether she could apply for disability benefits while on suspension pending termination. (P SF Par. 94). Butler claims that she was told she could not because she had been suspended and her employee record was "cut." (P SF Par. 95). Defendants admits that Butler called the Attendance Office on April 22, 2003, but deny that she inquired about disability benefits. (R. P SF Par. 94, 95). Butler also points to evidence that indicates it was the practice of Illinois Bell in similar circumstances to deny requests for disability benefits. Thus, there are legitimately disputed facts concerning whether personnel at the Attendance Office told Butler that she could not apply for disability benefits and whether such an application would have been futile regardless, in light of Illinois Bell's common practices.

Thus, there are genuinely disputed facts concerning the alleged misrepresentations and neither side can prevail as a matter of law on the estoppel claims that are based upon the representation by the Attendance Office personnel that Butler could not receive disability benefits while on suspension. Therefore, we deny Butler's motion for summary judgment on the estoppel claim that is based on the alleged statement by Attendance Office personnel that she was ineligible for disability benefits because she was on suspension.

## II. Breach of Fiduciary Duty Claim (Count II)

As we discussed above, it is clear based on the evidence that the managers of the Attendance Office were not fiduciaries of the Plans. Even though there is strong evidence that the personnel at the Attendance Office were poorly trained based on misinformation that has not been contested, there are genuinely disputed facts in regard to whether the personnel at the Attendance Office were properly trained by the fiduciaries of the Plans. The trier of fact must make such factual determinations and, therefore, we deny Butler's motion for summary judgment on the breach of fiduciary duty claim (Count II).

## III. SADBP Interpretation Claim (Count III)

Butler also moves for summary judgment on the SADBP interpretation claim (Count III). However, as is explained above, even though there sufficient evidence that Defendants' interpretation of the SADBP may be erroneous, there is not

sufficient evidence to conclude as a matter of law that Defendants' actions were arbitrary and capricious. There are genuinely disputed facts in regard to this claim that must be addressed by the trier of fact. Therefore, we deny Butler's motion for summary judgment on the SADBP interpretation claim (Count III).

## CONCLUSION

Based on the foregoing analysis, we grant Butler's partial motion for summary judgment on the estoppel claims (Count I) that are based upon the representations by Attendance Office personnel that Butler was taking FMLA leave. We deny Butler's motion for summary judgment on the estoppel claims (Count I) that are based on the alleged statements by Attendance Office personnel that Butler was ineligible for disability benefits. We also deny Butler's motion for summary judgment on the breach of fiduciary duty claim (Count II), and the SADBP interpretation claim (Count III). We also deny Defendants' motion for summary judgment in its entirety.


_Samuel Der-Yeghiayan_
Samuel Der-Yeghiayan
United States District Court Judge

Dated: April 19, 2006